Estate of Carl Genenwein, Deceased, Anna M. Genenwein, Executrix, and Anna M. Genenwein, Individually v. Commissioner.
Estate of Genenwein v. Commissioner
Docket No. 38547.
United States Tax Court
T.C. Memo 1955-331; 1955 Tax Ct. Memo LEXIS 6; 14 T.C.M. (CCH) 1298; T.C.M. (RIA) 55331; December 27, 1955
Lee S. Jones, Esq., 920 Kentucky Home Life Building, Louisville, Ky., for the petitioners. Charles R. Hembree, Esq., for the respondent. LEMIRE involves deficiencies in income tax and penalties as follows: 25%
50%
Year
Deficiency
Penalty
Penalty
1944
$ 882.49
$220.63
$ 441.25
1945
3,374.17
843.55
1,687.09
1947
737.20
184.30
368.60
1950
4,580.94
2,290.47
The issues are (1) whether the respondent correctly determined the increase in net worth and living expenses of Carl and Anna Genenwein for the years 1944, 1945, *7 1947, and 1950; (2) whether the gain realized in 1950 from the sale of Millers Lane property is nontaxable under the provisions of section 112(f) of the Internal Revenue Code of 1939; (3) whether all or part of the deficiency for each of the taxable years in question is due to fraud with intent to evade tax; and (4) whether petitioners are liable for the 25 per cent delinquency penalty under section 291(a) of the Code for the taxable years 1944, 1945, and 1947. Findings of Fact The stipulated facts are found accordingly. During the taxable years Carl and Anna Genenwein were husband and wife. On January 2, 1953, Carl died and his wife Anna was duly appointed executrix of his estate. Carl and Anna Genenwein filed no federal income tax returns for any year prior to 1950. For the year 1950 they filed a joint return with the collector of internal revenue for the district of Kentucky. In 1942 Carl and Anna Genenwein moved from Texas to Jefferson County, Kentucky. They rented approximately 26 acres, known as the Millers Lane property, from Carl's father, William Genenwein, Sr., who died in 1948. On June 21, 1949, his widow, Flora L. Genenwein, conveyed the Millers Lane property to *8 her son Carl and his wife. During 1942 and until November 1950, Carl and Anna Genenwein lived at the Millers Lane address, and grew vegetables in truck gardens and greenhouses. Some of the vegetables were sold on the market but must of them were sold to the Atlantic Commission Company, a purchasing agent for the Atlantic and Pacific Company. During the taxable periods involved Carl and Anna Genenwein kept no books or records from which their income could be computed, and the respondent determined their taxable income by the use of the net worth plus the nondeductible expenditures method. The net worth statement prepared by the respondent and used as a basis for his determination of net income for the period December 31, 1943, to December 31, 1950, inclusive, is as follows: ASSETS
12-31-43
12-31-44
12-31-45
12-31-46
First National Bank
$ 174.54
$ 279.49
$ 183.01
$369.63
(checking)
Farm and improvements
10,000.00
(Edinburg, Texas)
1 Greenhouse and barn
5,000.00
5,000.00
5,000.00
2 Greenhouses and small barn
13,000.00
13,000.00
Gas underground system
500.00
500.00
500.00
Farm, Millers Lane
Farm, Lower Hunter's Trace
Improvements on Millers Lane
Water line and pipe
Irrigation
5,000.00
5,000.00
5,000.00
5,000.00
Deep well
2,100.00
2,100.00
2,100.00
New furnace
200.00
200.00
200.00
Stove
220.00
220.00
220.00
Washing machine
Television
Furniture and furnishings
Radio
Refrigerator
285.00
285.00
285.00
285.00
Tractor D-4
3,100.00
3,100.00
3,100.00
3,100.00
Tractor DC Case
1,200.00
1,200.00
1,200.00
1,200.00
Truck, Ford, 1939
1,200.00
1,200.00
1,200.00
Disc
200.00
200.00
200.00
200.00
Harrows
200.00
200.00
200.00
200.00
Planters
200.00
200.00
200.00
200.00
Multitiller
Cement mixer
Truck, International, 1946
2,432.00
Truck, International, 1949
Truck, Ford, Dump, 1950
Loader for tractor
Electric and small hand tools
Auto - Chrysler 1939
1,300.00
Auto - Desota
1,300.00
1,300.00
Auto - Chrysler, 1946
2,000.00
Auto - Buick
Auto - Chrysler
Auto - Ford, 1949
Slop truck, 1933, Diamond T
TOTAL ASSETS
$22,859.54
$20,984.49
$33,888.01
$36,006.63
Federal farm loan (Texas)
$ 6,800.00
Notes payable, First Nat'l
Bank
Notes payable, First Nat'l
Bank
Notes payable, First Nat'l
Bank
Notes payable, First Nat'l
$ 507.50
Bank
Notes payable, First Nat'l
Bank
Notes payable, First Nat'l
$ 2,432.00
Bank
Bank of Louisville
Mrs. Flora L. Genewein
Northwestern Mutual Life Ins.
1,000.00
$ 2,700.00
2,700.00
2,700.00
Depreciation reserve
2,580.00
3,415.00
4,935.00
5,741.00
TOTAL LIABILITIES
$10,380.00
$ 6,115.00
$ 7,142.50
$10,873.40
NET WORTH
$12,479.54
$14,869.49
$26,745.51
$25,133.23
INCREASE IN NET WORTH
2,389.95
11,876.02
(1,612.28)
Living expenses
4,500.00
4,500.00
4,500.00
Adjustment for long-term gain
Federal income tax paid
Adjustment for gift
(2,000.00)
(2,000.00)
Corrected income
$ 6,889.05
$14,376.02
$ 387.72
Income reported
Deficiency
$ 6,889.05
$14,376.02
$ 387.72
*9 ASSETS
12-31-47
12-31-48
12-31-49
12-31-50
First National Bank
$ 93.83
$ 81.80
$ 1.36
$13,466.40
(checking)
Farm and improvements
(Edinburg, Texas)
1 Greenhouse and barn
5,000.00
5,000.00
5,000.00
2 Greenhouses and small barn
13,000.00
13,000.00
13,000.00
Gas underground system
500.00
500.00
500.00
Farm, Millers Lane
20,000.00
Farm, Lower Hunter's Trace
53,663.54
Improvements on Millers Lane
1,025.00
1,025.00
1,025.00
Water line and pipe
2,500.00
2,500.00
2,500.00
Irrigation
5,000.00
5,000.00
5,000.00
5,000.00
Deep well
3,000.00
3,000.00
3,000.00
New furnace
200.00
200.00
200.00
Stove
220.00
220.00
220.00
220.00
Washing machine
250.00
250.00
Television
353.00
Furniture and furnishings
2,812.48
Radio
27.50
Refrigerator
285.00
285.00
285.00
285.00
Tractor D-4
3,100.00
3,100.00
3,100.00
3,100.00
Tractor DC Case
1,200.00
1,200.00
1,200.00
1,200.00
Truck, Ford, 1939
Disc
200.00
200.00
200.00
200.00
Harrows
200.00
200.00
200.00
200.00
Planters
200.00
200.00
200.00
200.00
Multitiller
700.00
700.00
Cement mixer
800.00
Truck, International, 1946
2,432.00
2,432.00
Truck, International, 1949
1,830.00
1,830.00
Truck, Ford, Dump, 1950
2,200.00
Loader for tractor
500.00
Electric and small hand tools
800.00
Auto - Chrysler 1939
Auto - Desota
Auto - Chrysler, 1946
2,000.00
2,000.00
Auto - Buick
2,375.00
Auto - Chrysler
2,700.00
Auto - Ford, 1949
1,900.00
1,900.00
Slop truck, 1933, Diamond T
200.00
TOTAL ASSETS
$40,155.83
$40,143.80
$62,686.36
$92,607.92
Federal farm loan (Texas)
Notes payable, First Nat'l
$ 1,194.20
Bank
Notes payable, First Nat'l
$ 924.20
Bank
Notes payable, First Nat'l
$ 524.98
Bank
Notes payable, First Nat'l
Bank
Notes payable, First Nat'l
304.50
Bank
Notes payable, First Nat'l
609.00
Bank
Bank of Louisville
7,200.00
Mrs. Flora L. Genewein
20,000.00
$19,000.00
Northwestern Mutual Life Ins.
2,700.00
2,700.00
2,700.00
2,700.00
Depreciation reserve
7,810.30
9,941.70
10,833.50
7,642.00
TOTAL LIABILITIES
$12,313.50
$13,870.40
$41,258.48
$29,342.00
NET WORTH
$27,842.33
$26,273.40
$21,427.88
$63,265.92
INCREASE IN NET WORTH
2,709.10
(1,568.93)
(4,845.52)
41,838.04
Living expenses
4,500.00
4,500.00
4,500.00
4,500.00
Adjustment for long-term gain
(19,830.15)
Federal income tax paid
Adjustment for gift
Corrected income
$ 7,209.10
$ 2,931.07
($ 345.52)
$26,507.89
Income reported
9,867.81
Deficiency
$ 7,209.10
$ 2,931.07
($ 345.52)
$16,640.08
*10 In his net worth statement the respondent has included as assets of Carl and Anna Genenwein certain improvements to the Millers Lane property which were installed and paid for by William Genenwein, Sr. The designated improvements and the amounts expended therefor by William Genenwein, Sr., are as follows: 1944
Greenhouse and barn
$5,000
Gas underground system
500
Deep well
2,100
New furnace
200
1947
Improvements on Millers Lane prop-
erty
$1,025
Water pipe and line
2,500
Deep well strainer
900
In 1945 Carl Genenwein expended the sum of $4,000 for materials to erect two greenhouses and a barn. The labor thereon was performed by Carl, his father, William Genenwein, Sr., and his brother, William, Jr. In 1946 Carl and Anna Genenwein purchased a Chrysler automobile for $2,000 with funds borrowed from William Genenwein Jr. The loan was not repaid during the taxable years in question. No liability for such loan is reflected on the net worth statement. In 1949 Carl and Anna Genenwein purchased a Ford automobile for $1,900 with funds borrowed from the Bank of Louisville. The loan was not repaid during the taxable years involved. In 1944 Anna Genenwein *11 received the sum of $500 from the estate of her mother. In 1948 she received the sum of $350 representing the cash surrender value of an insurance policy on the life of her father which was assigned to her. Neither amount is reflected on the net worth statement. During the taxable years involved Carl and Anna Genenwein had their four minor children living with them. The living expenses of Carl and Anna Genenwein for each of the taxable years 1944 to 1949, inclusive, were not less than $3,000, and for the year 1950 were $4,500. In the summer of 1950 Lee Babcock, an agent of the Kentucky and Indiana Railroad, approached Carl with an offer to buy the Millers Lane property. The offer was rejected and Carl made a counter offer which was rejected. Other conferences were held at which Babcock indicated that the railroad company would condemn the property if they refused to sell. Carl did not want to sell and consulted his attorney. The attorney, together with a real estate man, went out to the property and he later gave his opinion as to the value of the land per acre. The attorney advised Carl that the railroad could condemn and that it would be better to sell than become involved *12 in a condemnation suit. On July 15, 1950, at the residence of Babcock, Carl and Anna executed a sales and purchase contract. The contract was accepted by Walter N. McFadden and $100 was paid. The next day Anna Genenwein learned that McFadden was acting for the Phillip Morris Tobacco Company. On August 16, 1950, a deed covering 17 1/2 acres was delivered in exchange for $52,809.66. On October 6, 1950, a deed to the remaining 9 acres was delivered in exchange for $27,208.50. The checks in payment were made by the Phillip Morris Tobacco Company. At the time of the sale of the 17 1/2 acres, $7,734.89 of the proceeds was paid to the Kentucky Trust Company for a release of the mortgage. R. H. Hall, agent, was paid a commission of $2,774.97 on the sale of August 16, 1950, and $1,310 on the October 6, 1950, sale. A part of the proceeds of the sale was paid out for living expenses and for the purchase of furniture, tools, equipment, two trucks, and an automobile. On January 8, 1951, Carl and Anna Genenwein purchased a tract of 20 acres from his mother, Flora L. Genenwein, issuing their notes for the purchase price. The notes were not paid at the time of the hearing of this proceeding. *13 The greenhouses which were erected on the Millers Lane property were removed to the newly acquired land and a new residence and packing shed were also erected thereon. The source of the funds and the cost of such improvements are not shown. Carl and Anna Genenwein borrowed an additional $30,000 which was used in establishing the improvements on the newly acquired property. Petitioners have failed to show what part of the proceeds from the sale of the Millers Lane property was expended for the acquisition of property similar or related in service and use to the property converted. The failure of Carl and Anna Genenwein to file income tax returns for each of the years 1944, 1945, and 1947, was not due to reasonable cause but to wilful neglect. The respondent has failed to show that all or any part of the deficiency for each of the years 1944, 1945, 1947, and 1950, was due to fraud with intent to evade tax. Opinion LEMIRE, Judge: Carl and Anna Genenwein failed to keep records as required by law and the respondent had the right to compute their taxable income by such method as in his opinion would clearly reflect their income. Sec. 41, I.R.C. (1939). Upon the facts disclosed *14 by this record the use of the net worth and nondeductible expenditures method is justified. The testimony is directed to the inclusion in the net worth statement of various amounts of expenditures for improvements on the Milers Lane property as assets acquired out of income, the omission of certain gifts, the revenue agent's estimate as to the amount of living expenditures, and the inclusion of gain from the sale of the property in 1950. The Millers Lane property was owned by William Genenwein, Sr., until his death in 1948. In June 1949 it was conveyed by his widow to their son Carl. It was operated by the taxpayers as a vegetable farm until its sale in the Fall of 1950. The first item shown on the net worth statement which petitioners challenge is the amount of $5,000 for the taxable years 1944 to 1949, inclusive, for the improvement designated as greenhouse and barn. The evidence shows that such improvement was paid for by William Genenwein, Sr., and that the labor involved was performed by him and his son, William, Jr. The amount of $5,000 is to be excluded as an asset. The next contested item relates to the two greenhouses and barn shown as an asset for the years 1945 *15 to 1949, inclusive, in the amount of $13,000. The evidence establishes that the labor involved in installing such improvement was performed by Carl, his father, William Genenwein, Sr., and his brother, William, Jr. The materials cost $4,000 and were furnished by Carl. Of the $13,000 shown on the net worth statement, only the amount of $4,000 is properly includible as an asset for such improvement. The amount of $500 appearing as an asset for the years 1944 to 1949, inclusive, for the improvement designated as gas underground system is contested. The evidence discloses that the equipment for this system was brought by Carl from his former home in Texas and was installed with the additional labor of one workman employed for only one day. The amount $500 for the gas underground system is to be excluded from the assets appearing on the net worth statement. Additional items which are in controversy are the deep well in the amount of $2,100 for the years 1944 to 1946, inclusive, and the strainer in the amount of $900 added to the well in 1947; a new furnace installed in 1944 at a cost of $2,000; the amount of $1,025, designated as improvements to the Millers Lane property; and the amount *16 of $2,500 for water pipe and line. The evidence establishes that all such improvements were installed and paid for by William Genenwein, Sr. We hold, therefore, that the amount of $2,100 for the deep well, the amount of $900 for the strainer, the amount of $200 for the new furnace, the amount of $1,025 for improvements to the Millers Lane residence, and the amount of $2,500 for a water pipe and line, are to be excluded from the assets appearing on the net worth statement. The respondent's treatment with respect to the Chrysler automobile acquired in 1946 for the sum of $2,000, and the Ford car acquired in 1949 for $1,900, as assets, is also in controversy. The evidence shows that the Chrysler car was acquired with funds borrowed from William Genenwein, Jr., and that the loan has not been repaid. No liability for the $2,000 loan is reflected in the net worth statement and, therefore, the amount is to be excluded as an asset. With respect to the Ford car acquired in 1949 with funds borrowed from the Bank of Louisville, the net worth statement reflects a loan of $7,200 from the Bank of Louisville in 1949. The petitioners have not shown that the loan of $1,900 for the Ford car is *17 not included in the $7,200 liability to the Bank of Louisville. Therefore, we hold that the sum of $1,900 for the Ford car is properly included as an asset and no further liability is to be reflected for 1949. Petitioners further contend that the net worth statement does not reflect gifts received by Anna Genenwein. She testified that she received $500 in 1944 from the estate of her mother and in 1948 she received $350 cash on the surrender of an insurance policy on the life of her father which had been assigned to her. Since deficiencies are also determined against Anna Genenwein such amounts should be reflected in a revised net worth statement. Petitioners also contest the amount of living expenses used by respondent in determining net income. For each of the years 1944 to 1950, inclusive, the estimated living expenses were fixed at $4,500. On brief, the petitioners concede that the amount of $4,500 for the year 1950 is reasonable, but contend that such amount is excessive for the years 1944 to 1949, inclusive. Anna Genenwein testified that the living costs were moderate. She estimated the net amount to be $1,604, which she arrived at by allowing $1,000 for food, $300 for clothing, *18 $104 for medical expenses, and $200 for entertainment. The items on which she has placed an estimate are too limited in scope. They do not cover such ordinary expenses of every household, such as heat, utilities, telephone, dry cleaning, automobile operation and repairs. The Genenwein family consisted of six individuals, including four minor children, some of whom were attending school. After giving effect to the testimony of their mode of living and other pertinent matters, we are persuaded that the petitioners' living expenses were not less than $3,000 for each of the years 1944 to 1949, inclusive, and $4,500 for the year 1950, and have so found as a fact. In computing the deficiency for the year 1950 the respondent has made an adjustment in the amount of $19,830.15 for a longterm capital gain resulting from the sale of the Millers Lane property in 1950. Petitioners contend that such gain is not taxable since the sale was made under a threat of condemnation and that all of the proceeds were expended in the acquisition of other property which is similar or related in service or use to the property converted. The evidence indicates that the Genenweins did not desire to sell their *19 property and did so in the belief that it would be condemned if not sold voluntarily. Assuming, without deciding, that the sale was involuntary, we are convinced that the petitioners have not met the requirements entitling them to the benefits of section 112(f) of the 1939 Code. Under that provision and the regulations applicable to the year 1950, there must be an actual tracing of the proceeds of sale into the property acquired as a replacement. Ovider Realty Co. v. Commissioner, 193 Fed. (2d) 266, affirming a memorandum opinion of this Court [10 TCM 433,]; Twinboro Corporation v. Commissioner, 149 Fed. (2d) 574, certiorari denied 326 U.S. 754. This the petitioners have failed to do. The record shows that $7,734.89 of the proceeds was used to discharge a mortgage, and that various undisclosed amounts were expended for living purposes and to purchase furniture, two trucks, an automobile, and miscellaneous equipment and tools. Since a substantial part of the proceeds was not expended in the acquisition of similar or related property, and as it has not been shown what part was so used, there is no basis for holding that the gain *20 realized should not be recognized. John J. Bliss, 27 B.T.A. 803. On brief, petitioners argue that the longterm capital gain in the amount of $19,830.15 determined by the respondent is too low. There is no suggestion as to the proper amount nor are there sufficient facts in the record to permit us to make a determination. Therefore, we sustain the amount which the respondent has determined. While we have accepted the testimony of the witnesses for petitioners as credible, we do not thereby intend any reflection on the credibility of the revenue agent sworn on behalf of the respondent. The agent testified that the amounts reflected on the net worth statement were largely derived from conferences with Carl Genenwein. The testimony offered on behalf of the petitioners was not too satisfactory. This is no doubt due somewhat to the unavailability as witnesses of Carl Genenwein and his father, William Genenwein, Sr., both of whom died prior to the trial. They possessed firsthand knowledge of the facts. Due consideration has been given to such an unfortunate situation in appraising the somewhat general testimony of Anna Genenwein. The respondent imposed a 50 per cent addition *21 to the tax for fraud under section 293(b) of the Code. We are convinced that the respondent has failed to establish that part of the deficiency for each of the taxable years in question is due to fraud with intent to evade tax. Although a joint return was filed for the year 1950, such return was not offered in evidence. The 50 per cent addition to the tax for fraud under section 293(b) as to each of the taxable years 1944, 1945, 1947, and 1950, is therefore disallowed. A 25 per cent delinquency penalty is also imposed under section 291(a) of the Code for failure to file a return. Petitioners concede that no return was filed for the taxable years 1944, 1945, and 1947. No explanation or excuse for such failure has been offered. The deficiencies must be recomputed in accordance with our findings of fact and opinion. In the event any deficiency is determined under such recomputation for any of the taxable years 1944, 1945, and 1947, the 25 per cent delinquency penalty is to be added and is hereby allowed. Decision will be entered under Rule 50.